```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JOHN WASHINGTON,

                        Petitioner,
                                                            REPORT &
            -against-                                       RECOMMENDATION
                                                            08-CV-4835 (NGG)
ROBERT ERCOLE, Superintendent, Green
Haven Correctional Facility,

                        Respondent.
--------------------------------------------------------x
```
GOLD, STEVEN M., *United States Magistrate Judge*:

John Washington brings this petition for a writ of habeas corpus pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Washington was convicted after trial in Richmond County of two counts of Attempted Murder in the Second Degree, Assault in the First Degree, and Criminal Possession of a Weapon in the Second and Third Degrees and sentenced to 25 years to life imprisonment. Habeas Pet. ¶¶ 3, 4. Petitioner's sole claim on appeal was a denial of due process based on a suggestive lineup. Petitioner's conviction was affirmed first by the Appellate Division, Second Department, and leave to appeal was denied by the New York Court of Appeals. *People v. Washington*, 40 A.D.3d 1136 (2d Dep't), *leave to appeal denied by* 9 N.Y.3d 883 (2007).

In his habeas petition, Washington challenges his conviction on the same ground he raised on direct appeal: that he was denied due process because of a flawed identification lineup. Habeas Pet. 2. Washington argues that the lineup was unduly suggestive because the fillers were different from him in three material ways: 1) in hair, 2) in body type, and 3) in skin tone. Habeas Pet. ¶ 12. United States District Judge Nicholas G. Garaufis has referred the petition to me for a report and recommendation. Docket Entry 7. For the reasons stated below, I respectfully recommend that Washington's petition be denied.

**Background**

Washington was convicted of attempted murder and related charges in connection with the shooting of Michael Walker and Isa Martin at a public housing project in Staten Island on September 24, 2003. Resp. Aff. ¶¶ 2, 3.[1] The shooting was captured on surveillance videos, but the shooter is seen on the videos only from behind and in profile. *Id*. The day after the shooting, detectives showed one of the victims, Isa Martin, and an eyewitness, Vanessa Lyons, a photo array that included a photograph of petitioner Washington.[2] *Id*. ¶ 4. Both Martin and Lyons identified Washington as the shooter. *Id*. Washington was arrested that day and subsequently indicted on charges of attempted murder, assault, and weapons possession. *Id*. ¶¶ 4, 5.

Prior to the trial, the People moved for an order compelling Washington to appear in an identification lineup. *Id*. ¶ 6. Defense counsel responded and argued, *inter alia*, that any lineup include "large, stout men" as fillers, in light of Washington's size. *Id*. The trial court entered the order directing that the lineup be held, but did not specify the type of fillers to be employed. *Id*.; Order dated Nov. 6, 2003, Docket Entry 12-4.

On November 19, 2003, Detectives Guy Gazillo and Michael DiBenedetto conducted a lineup identification procedure to be viewed by five individuals. Resp. Aff. ¶ 7. The lineup was videotaped and defense counsel attended. *Id*. ¶ 8. At the *Wade* hearing contesting the identification procedure, Detective Gazillo stated that he attempted to use fillers that approximated Washington's height, weight and facial features. Hrg. Tr. at 36.[3] Defense counsel's sole objection at the lineup was to the differences between petitioner's hairstyle and

---

[1] "Resp. Aff." refers to Respondent's Affidavit in Opposition to Writ of Habeas Corpus, dated Mar. 13, 2009, Docket Entry 4.

[2] Detectives quickly identified Washington as a suspect in the shooting. *See* Decision and Order dated Mar. 30, 2004, at 1, Docket Entry 12-5.

[3] "Hrg. Tr." refers to Washington's *Mapp/Wade* Hearing Transcript of Mar. 2 and 3, 2004.

2

the fillers'; one of the fillers had dreadlocks and two were bald or partially bald. Resp. Aff. ¶ 8; Hrg. Tr. at 62-63. Detective DiBenedetto, who was not otherwise involved in the case and did not know what position petitioner would occupy, arranged for five witnesses to view the lineup. Resp. Aff. ¶ 8. Three of the five witnesses identified Washington as the shooter; the other two witnesses were unable to make any identification. *Id.*; Decision and Order dated Mar. 30, 2004, at 4, Docket Entry 12-5.

By Order dated March 30, 2004, the trial court denied Washington's *Wade* motion, finding no basis for concluding that the lineup was suggestive. Resp. Aff. ¶ 11; Decision and Order dated Mar. 30, 2004. More specifically, the court stated that the "unredacted videotape of the lineups reveals that the lineups were composed of individuals sharing similar physical characteristics and dressed in a generally similar manner. There is no characteristic or visual clue that would have oriented the viewer toward [Washington] as the perpetrator." Decision and Order dated Mar. 30, 2004 at 4.

Martin and Lyons testified at trial. Both described their pre-trial identifications of Washington at the lineup and identified Washington as the shooter in court. Resp. Aff. ¶¶ 12-14, 18. Walker, the other victim of the shooting, was not cooperative with investigators and did not testify at the trial. *Id.* ¶ 19. A police officer who was monitoring the surveillance cameras at the time of the shooting, as well as two detectives involved in the investigation, also testified at the trial. *Id.* ¶¶ 15-16, 19-20. Washington was found guilty on all counts and sentenced to four concurrent terms of imprisonment of 25 years to life. *Id.* ¶ 21.

## AEDPA's Procedural Requirements and Legal Standards

This court's review of Washington's petition is governed by AEDPA, 28 U.S.C. § 2254. Before reaching the merits of petitioner's claims, I review the procedural requirements imposed

3

by AEDPA.[4]

**A.     Exhaustion**

AEDPA requires that habeas petitioners serving state sentences first exhaust all available state court remedies. 28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

> State remedies are deemed exhausted when a petitioner has:
> (i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in the lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim.

*Ramirez v. Attorney General of New York*, 280 F.3d 87, 94 (2d Cir. 2001). In *Baldwin*, the Supreme Court held that "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material . . . that does so." 541 U.S. at 32.

Washington raised the same grounds asserted in his petition – that the lineup was flawed because the fillers were different from him in hair, body type, and skin tone – on direct appeal. Thus, petitioner's claim was clearly exhausted in state court.[5]

In March, 2009, Washington sought a stay of his federal habeas corpus petition in order to pursue collateral proceedings in state court, alleging that his trial counsel was ineffective for failing to object to the lineup with respect to the differences in body type and skin tone. Pet. Mot.[6] As noted in my Order dated June 15, 2009, it was not clear whether petitioner sought to pursue state collateral proceedings in order to establish "cause" for a procedural default, or whether he sought to exhaust an ineffective assistance claim so that he could move to amend his

---

[4] There is no dispute and it is clear that Washington filed his petition within the one-year limitations period set by Congress in AEDPA, 28 U.S.C. § 2244(d)(1).

[5] As discussed below, however, I find that two aspects of his claim regarding differences in the fillers are procedurally barred.

[6] "Pet. Mot." refers to Petitioner's Motion to Stay, Docket Entry 6.

4

petition to add it.  *See* Docket Entry 11; Pet. Mot. 3.  In any event, I denied petitioner's motion, finding that it would be "plainly meritless" for petitioner to return to state court to pursue his ineffective assistance claim.[7]  Docket Entry 11.

In his Reply, petitioner appears to raise new grounds for habeas relief, including claims that the search of his home, seizure of his clothes, and arrest were unlawful.[8]  Pet. Reply ¶¶ 6-8, Docket Entry 13.  These claims, however, were not raised by petitioner in his state court appeals and thus they have not been exhausted; indeed, they have never been raised in any prior state or federal proceedings.  Moreover, as the Supreme Court held in *Stone v. Powell*, 428 U.S. 465 (1976), claims alleging violations of the Fourth Amendment are not cognizable in federal habeas corpus proceedings, except in two limited circumstances not applicable here.[9]  *Baker v. Bennett*, 235 F. Supp. 2d 298, 306-07 (2d Cir. 2002); *Kirk v. Burge*, 646 F. Supp. 2d 534, 545 (S.D.N.Y. 2009).  Accordingly, any amendment to Washington's habeas petition to add Fourth Amendment claims would be futile.  Thus, the only claim to be reviewed is whether the lineup was unduly suggestive.

**B.     Procedural Bar – Independent and Adequate State Grounds**

Federal habeas review is foreclosed where a claim is procedurally barred on independent

---

[7] If the court deems petitioner's request as a motion to amend to add a claim of ineffective assistance of counsel, I recommend denying that motion as futile for the reasons stated in my Order.  *See* Docket Entry 11.

[8] Although Washington has not moved to amend his petition to include these new grounds either, I interpret the arguments raised in petitioner's Reply to include a motion to amend.  *See Perez v. Greiner*, 2004 WL 2937795, at *2 n.1 (S.D.N.Y. Dec. 17, 2004) (noting that *pro se* submissions should be construed liberally and interpreted "to raise the strongest arguments they suggest").  For the reasons discussed in the text, however, I would in any event recommend denying such a motion as futile.

[9] Habeas review of a Fourth Amendment violation is foreclosed
> unless the State courts do not provide an adequate procedural mechanism for addressing the claim or the petitioner's claim was not meaningfully addressed because of a fundamental and unconscionable breakdown in that otherwise adequate mechanism.  As the Second Circuit has long recognized, New York's statutory procedures for addressing Fourth Amendment claims is fully adequate.

*Lasso-Reina v. Haponick*, 2009 WL 3334843, at *12 (S.D.N.Y. Oct. 14, 2009) (internal citations omitted).  I note that the search of Washington's home and seizure of his clothes were the subject of a *Mapp* hearing before the trial court, *see* Hrg. Tr., and petitioner has not identified any breakdown in the review process.

5

and adequate state grounds.[10] More specifically,

> [a] federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment rests on a state law ground that is independent of the federal question and adequate to support the judgment . . . . In particular, a state court procedural default will bar habeas review when the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar. Moreover, . . . even when a state court says that a claim is "not preserved for appellate review" but then rules "in any event" on the merits, such a claim is procedurally defaulted.

*Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (citations and internal quotation marks omitted). In addition, "[t]he Second Circuit has recognized that New York's preservation rule typically constitutes an independent and adequate state procedural ground on which the Appellate Division may deny a criminal defendant's appeal." *Cordero v. Rivera*, __ F. Supp. 2d __, 2009 WL 5171749, at *10 (S.D.N.Y. Dec. 29, 2009) (quotation marks omitted).

Here, the state court held that Washington's "contention regarding disparities in skin color and build are unpreserved for appellate review" and cited relevant state case law. *People v. Washington*, 40 A.D.3d at 1136. Indeed, defense counsel objected at the lineup only to differences in hairstyles among the fillers. At the *Wade* hearing, defendant again limited his objection to the fillers' hair. Hrg. Tr. 89-90. In its decision, the Appellate Division went on to state that "[i]n any event" the lineup was not unduly

---

[10] In order to overcome the procedural bar, a "prisoner [must] demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005). Washington seems to argue that his procedural default was caused by his counsel's ineffectiveness. Pet. Mot. 3. As discussed in my prior Order, however, a claim of ineffective assistance of counsel is procedurally barred. Docket Entry 11. Thus, Washington may not contend that his counsel's ineffectiveness is "cause" for his procedural default. *See Diaz v. Conway*, 2008 WL 2461742, at *13 (S.D.N.Y. June 17, 2008) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000), for the proposition that a claim of ineffective assistance of counsel must be presented to a state court as an independent claim before it may be used to establish cause for a procedural default). Washington has not demonstrated that any miscarriage of justice would occur if the habeas court did not review these claims. Consequently, Washington cannot overcome the procedural bar. *Ricco v. Burge*, 2009 WL 4341521, at *15-16 (S.D.N.Y. Dec. 2, 2009).

suggestive and cited supporting case law. *Id.* at 1137. Accordingly, I find petitioner's claim with respect to differences in skin color and build among the fillers in the lineup to be procedurally barred on independent and adequate state law grounds.

### Petitioner's Claim for Habeas Relief

Petitioner's sole remaining ground for habeas relief is his contention that the police identification lineup was unduly suggestive because of the differences in hairstyles among the fillers and Washington. As noted earlier, one filler had dreadlocks and two fillers were bald or partially bald. Hrg. Tr. 89-90. At the time of the lineup, Washington had short hair.

AEDPA's deferential standard provides that a federal court may not grant a writ of habeas corpus to a state prisoner on a claim that was adjudicated on the merits in state court

> unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Price v. Vincent*, 538 U.S. 634, 639-40 (2003). Thus, under AEDPA, a federal habeas court may not issue a writ simply because it decides that the state court applied Supreme Court precedent incorrectly. *Price*, 538 U.S. at 641. Rather,

> [u]nder the "contrary to" clause, a federal habeas court may grant the writ [only] if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). *See also Henry v. Poole*, 409 F.3d 48, 67-68 (2d Cir. 2005); *Cotto v. Herbert*, 331 F.3d 217, 248 (2d Cir. 2003) (noting that "the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of

7

incorrectness beyond error in order to obtain habeas relief") (internal quotation marks omitted); *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001).

In considering whether a lineup is unduly suggestive, the Second Circuit has stated that

> [w]hen the appearance of participants in a lineup is not uniform with respect to a given characteristic, the principal question in determining suggestiveness is whether the appearance of the accused, matching descriptions given by the witness, so stood out from all of the other[s] . . . as to suggest to an identifying witness that [that person] was more likely to be the culprit.

*U.S. v. Wong*, 40 F.3d 1347, 1359-1360 (2d Cir. 1994) (internal quotation marks omitted). In other words, a "lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator previously given by the witness and the other lineup participants obviously do not." *Raheem v. Kelly*, 257 F.3d 122, 134 (2d Cir. 2001).

In my Order dated June 15, 2009, I directed respondent to identify any descriptions of the shooter in the trial court record. Docket Entry 11. Respondent states that the record reveals that the only description is one that was given by the police officer monitoring the surveillance cameras. Resp. Aff. dated June 29, 2009 at ¶ 4. Although the police officer describes the clothing worn by the shooter, as seen on the videotape, she does not describe the shooter's hair. *Id*. *See also* Trial Tr. 98. There do not appear to be any descriptions of the shooter given by witnesses to the police. Resp. Aff. dated June 29, 2009 at ¶ 4. In the surveillance videotape, however, the shooter had short hair. Brief for Appellant-Defendant to Appellate Division – Second Department at 3.

Here, the differences in hairstyles did not create an unduly suggestive lineup, particularly where the hairstyle of the shooter was not a significant identifying characteristic. *Cf. Raheem*, 257 F.3d at 137 (finding lineup unduly suggestive where "the most prominent feature . . . mentioned by [witnesses] in their descriptions to the police was the shooter's black leather coat,"

8

and Raheem was the only one in the lineup wearing such a coat); *U.S. v. Eltayib*, 88 F.3d 157, 166 (2d Cir. 1996) (holding that a photo array was unduly suggestive where a witness had described the perpetrator as having "a head full of hair, real bushy hair, afro-type hair," and defendant was the only one in the array with a full head of hair).

Defense counsel and the detective who was responsible for obtaining the fillers for the lineup both believed that Washington's size was his most prominent characteristic, and sought to have fillers similar in bulk. Resp. Aff. ¶ 6; Resp. Aff. dated June 29, 2009 at ¶ 5. "Police stations are not theatrical casting offices; a reasonable effort to harmonize the line-up is normally all that is required. There is no requirement that a suspect in a lineup be surrounded by people identical in appearance." *Roldan v. Artuz*, 78 F. Supp. 2d 260, 271 (S.D.N.Y. 2000) (internal citation omitted). Although it might have been preferable to have all the participants in the lineup wear baseball caps or otherwise minimize the distinctions in hair, the variations in hairstyles alone did not make the lineup unduly suggestive in petitioner's case. *See*, *e.g.*, *West v. Greiner*, 2004 WL 315247, at *4-6 (E.D.N.Y. Feb. 12, 2004) (holding that a lineup was not unduly suggestive even though West was the only participant with gray hair where the witness' description did not mention the perpetrator's hair); *Roberson v. McGinnis*, 2000 WL 378029, at *8 n.12 (S.D.N.Y. Apr. 11, 2000) (noting, with extensive citations, that "there is no shortage of cases finding lineups . . . acceptable despite differences in hairstyle"). *Cf. Frazier v. New York*, 187 F. Supp. 2d 102, 110-11 (S.D.N.Y. 2002) (finding that a lineup was unduly suggestive where Frazier was the only one with long dreadlocks and the victim's description included mention of the perpetrator's dreadlocks).

In its decision affirming petitioner's conviction, the Appellate Division cited New York state cases holding, as does federal law, that fillers "need only be reasonably similar to the

defendant in appearance." *People v. Washington*, 40 A.D.3d at 1137. Thus, applying AEDPA's deferential standard, I conclude that the state court's decision was not contrary to, and did not unreasonably apply, clearly established Federal law, and did not result in an "unreasonable determination of the facts." 28 U.S.C. § 2254(d).

For all these reasons, I respectfully recommend that Washington's habeas petition be denied. Any objections to this Report and Recommendation must be filed within fourteen days and in any event no later than April 19, 2010. Failure to file objections within the specified time waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

_____/s/_____
**Steven M. Gold**
**United States Magistrate Judge**

**April 2, 2010**
**Brooklyn, New York**

A COPY OF THIS REPORT WAS MAILED ON THIS DAY TO JOHN WASHINGTON:
#05-A-0622
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, NY 12733-0116

*U:\eoc 2010\washington v ercole\r&r.docx*