UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN WASHINGTON,

                       Plaintiff,

-against-

SUPERINTENDENT ROBERT ERCOLE, *of Green Haven Correctional Facility*,

                       Defendant.

**MEMORANDUM & ORDER**

**08-CV-4835 (NGG) (SMG)**

------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner pro se John Washington ("Washington") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his January 12, 2005 conviction for two counts of attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in the second and third degrees in New York State Supreme Court, Richmond County. (Pet. (Docket Entry #1).) On April 8, 2009, the court referred Washington's petition to Magistrate Judge Steven M. Gold for a report and recommendation. (Docket Entry # 7.) On April 2, 2010, Magistrate Judge Gold recommended that the court deny Washington's petition. ("R&R" (Docket Entry # 15).) On April 19, 2010, Washington submitted objections to the R&R. (Pet'r's Obj. (Docket Entry # 16).) The court now reviews Magistrate Judge Gold's R&R. For the reasons set forth below, Washington's petition is denied.

**I.    BACKGROUND**

On September 24, 2003, Washington shot two individuals outside of a Staten Island housing project. (Grady Decl. (Docket Entry # 4) ¶ 3.) A surveillance camera captured the shooting. (Id.) On September 26, 2003, Washington was charged with two counts of attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in

1

the second and third degrees. (Id. ¶ 5.) On October 23, 2003, New York City detectives visited Washington's girlfriend's apartment. (Id. ¶¶ 16, 20.) With her consent, they entered the apartment and removed three denim jackets, purportedly belonging to Washington, as evidence. (Id.) On November 19, 2003, several New York City detectives conducted a lineup that included Washington; three out of five witnesses positively identified Washington as the shooter. (Id. ¶¶ 7, 8.) On March 2 and 3, 2004, the trial court conducted a suppression hearing regarding the denim jackets and the lineup. See Suppression Hr'g Tr. at 89, People v. Washington, No. 192/2003 (N.Y. Sup. Ct., Richmond Cnty. Mar. 2 & Mar. 3, 2004). On March 30, 2004, the court issued a written order declining to suppress either the denim jackets or the results of the lineup. See Order, People v. Washington, No. 192/2003 (N.Y. Sup. Ct., Richmond Cnty. Mar. 30, 2004). On January 12, 2005, after a jury trial, Washington was found guilty on all counts, and was sentenced to twenty-five years to life in prison. Sentencing Hr'g Tr. at 12-13, People v. Washington, No. 192/2003 (N.Y. Sup. Ct., Richmond Cnty. Jan. 12, 2005).

Washington directly appealed to the New York State Supreme Court, Appellate Division, Second Department, which affirmed his conviction on May 29, 2007. People v. Washington, 40 A.D.3d 1136 (2d Dep't 2007). On August 22, 2007, the New York Court of Appeals denied Washington further leave to appeal. People v. Washington, 9 N.Y.3d 883 (2007). Washington did not attempt to collaterally attack his conviction. (Pet. ¶ 10.) On November 21, 2008, Washington filed his petition for a writ of habeas corpus in this court. (See Pet.)

On April 8, 2009, the court referred Washington's petition to Magistrate Judge Gold for a report and recommendation. (Docket Entry # 7.) On April 2, 2010, Magistrate Judge Gold recommended that the court deny Washington's petition. (R&R.) On April 19, 2010, Washington submitted objections to the R&R. (Pet'r's Obj.) Washington objected to every

aspect of Magistrate Judge's Gold's R&R, and the court now reviews the R&R de novo. See 28 U.S.C. § 636(b).

## II. STANDARDS OF REVIEW

### A. Reports and Recommendations

In reviewing a magistrate judge's report and recommendation as to a dispositive matter, the district court "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000). The district court reviews de novo "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). Where a plaintiff proceeds pro se, the court reads his submissions liberally and interprets them as raising the strongest arguments they suggest. See McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Even when reviewing pro se objections, a district court may adopt the recommendation of a magistrate judge for alternative reasons not set forth in the magistrate's report. See 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.").

### B. Petitions for Writs of Habeas Corpus

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Determinations of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden

3

of rebutting the presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2001). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. For relief to be warranted, the "state court's application of governing federal law . . . must be shown to be not only erroneous, but objectively unreasonable." Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009) (internal quotation marks omitted).

In assessing "clearly established" federal law, a federal district court must confine itself to the holdings, as opposed to the dicta, of the Supreme Court. See Carey v. Musladin, 549 U.S. 70, 74 (2006). Moreover, "Musladin admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions." Rodriquez v. Miller, 499 F.3d 136, 140 (2d Cir. 2007); see also Yarborough v. Alvarado, 541 U.S. 652, 660-61 (2004). ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.").

A state court's finding of procedural default, with certain exceptions, bars a federal court from granting habeas relief. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). To

4

overcome such a default, a petitioner must demonstrate either (1) cause and actual prejudice, or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. Id. at 750. A state court holding that a claim is *both* procedurally barred and without merit is sufficient to invoke a state procedural bar. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 (2d Cir. 2000).

Again, a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "If a pro se litigant pleads facts that would entitle him to relief, that petition should not be dismissed because the litigant did not correctly identify the statute or rule of law that provides the relief he seeks." Thompson v. Choinski, 525 F.3d 205, 209 (2d Cir. 2008).

## III. DISCUSSION

### A. Warrantless Search Claims

In his Objections to the R&R, Washington argues that the State's warrantless search of his girlfriend's apartment violated his Fourth Amendment rights because there were not "exigent circumstances" at the time of the search. (Pt'r's Obj. at 2.) This claim, however, was not raised in Washington's direct appeal. See People v. Washington, 40 A.D.3d 1136 (2d Dep't 2007); People v. Washington, 9 N.Y.3d 883 (2007). AEDPA requires petitioners for writs of habeas to have first "exhausted the remedies available in the courts of the State" of the conviction regarding constitutional violations, unless the state lacks a "corrective process" to address such violations or there circumstances that render the process "ineffective." 28 U.S.C. § 2254(b)(1). A petitioner exhausts his state remedies where he has presented his constitutional claim to the highest court of that state, and informed it of the factual and legal basis for his claim. Ramirez v. Att'y Gen. of N.Y., 280 F.3d 87, 94 (2d Cir. 2001). Indeed, New York State has a "corrective process" to address criminal defendants' Fourth Amendment claims: suppression hearings

5

pursuant to Mapp v. Ohio, 367 U.S. 643 (1961). See Singh v. Miller, 104 F. App'x 770, 772 (2d Cir. 2004) (New York State Supreme Court suppression hearing constituted "ample opportunity" for defendant to raise his Fourth Amendment claims). Here, Washington has alleged nothing—aside from his disagreement as to the outcome reached by the state court—that suggests that the state court's suppression hearing was "ineffective" in any way. Washington has consequently failed to exhaust his state-court remedies. Therefore, Washington's Fourth Amendment claims regarding the search of his girlfriend's apartment fail.

### B. Suggestive Lineup Claims

Washington argues that his lineup was unduly suggestive in violation of United States v. Wade, 388 U.S. 218 (1967). (Pt'r's Obj. at 7.) Specifically, he argues that there were differences in the fillers' skin color, physical build, and hairstyles that singled him out to the witnesses. (Id.)

#### 1. Skin Color and Physical Build Suggestiveness

Regarding his claims surrounding the fillers' skin color and physical build, Washington did not raise these arguments with the state trial court. On appeal, the Second Department determined that these claims were "unpreserved for appellate review . . . [but, i]n any event, the People satisfied their burden of proving that the pretrial lineup identification procedure was not unduly suggestive." People v. Washington, 40 A.D.3d 1136, 1136 (2d Dep't 2007). A federal court lacks jurisdiction over a habeas petitioner's federal claim if the state court adjudication of the claim "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999). This rule applies whether the state law ground is substantive or procedural. Id. Where a state appellate court finds that a petitioner's claim was not preserved for appellate review, this "[p]rocedural waiver under state law constitutes an independent and adequate state ground that bars federal

consideration of the substantive claim on habeas corpus." Rustici v. Phillips, 497 F. Supp. 2d 452, 482 (E.D.N.Y. 2007) (internal quotation marks and citation omitted). Moreover, where an appellate court "says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005). Here, because the Second Department concluded that Washington's claims concerning the fillers' skin color and build were not preserved for appellate review, the court lacks jurisdiction over this aspect of Washington's Wade claim.

2.   Hairstyle Suggestiveness *Wade* Claim

Washington did raise a claim concerning the fillers' hairstyle with the trial court, which was reviewed, and rejected, by the Second Department. Washington, 40 A.D.3d at 1136. There, the Second Department agreed with the trial court that "[t]he participants in the lineup were reasonably similar to the defendant in appearance, and any disparities between them did not render the lineup impermissibly suggestive or create a substantial likelihood of misidentification." Id. at 1137. The Supreme Court has held that a lineup is unduly suggestive where it creates "a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). This "substantial likelihood of irreparable misidentification" under Simmons exists where "one potential defendant is unnecessarily emphasized to the witness." Hart v. Garvin, 242 F.3d 365, 367 (2d Cir. 2000). This is a "fact dependent standard [that] 'demands a substantial element of judgment' in its application." Brisco v. Ercole, 565 F.3d 80, 90 (2d Cir. 2009) (quoting Yarborough, 541 U.S. at 664 (internal punctuation omitted)). "A [state] court applying this standard to the facts of a specific case is therefore entitled to significant 'leeway' when we review its decision for reasonableness." Id. (quoting Yarborough, 541 U.S. at 664).

7

The facts regarding the hairstyles of the fillers in Washington's lineup have never been in dispute. Washington and another filler had short hair, one had a "bald head," one a "nearly bald head," and the last had "either dreadlocks or braids." See Suppression Hr'g Tr. at 89. Although the fillers' hairstyles varied, it was not unreasonable for the Second Department to conclude that Washington was not "unnecessarily emphasized to the witness[es]," see Hart, 242 F.3d at 367, to make the lineup "unduly suggestive," see Simmons, 390 U.S. at 384. Other federal courts, in applying Simmons in the § 2254 context, have also concluded that slight variations in fillers' hairstyles did not create an "unduly suggestive" lineup. See Roldan v. Artuz, 78 F. Supp. 2d 260, 275 (S.D.N.Y. 2000) (collecting cases regarding suggestiveness of differences in hairstyles). Given that Washington had a similar hairstyle with another filler and, potentially, with the "almost bald" filler, the appellate court's conclusion that the lineup was not "unduly suggestive" was well within its "element of judgment." See Brisco, 565 F.3d at 90. Therefore, the Second Department's opinion, though brief, appears to be neither an unreasonable application of clearly established Supreme Court precedent, nor an unreasonable determination of the facts in Washington's case. See 28 U.S.C. § 2254(d).

## IV. CONCLUSION

Petitioner's petition for a writ of habeas corpus is DENIED. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
April 19, 2011

NICHOLAS G. GARAUFIS
United States District Judge